# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DEBRINA SPRAGGINS, as parent and next friend of N.C., a minor,<br><br>Plaintiff,<br><br>v.<br><br>NIKITA BROWN and the CHICAGO BOARD OF EDUCATION,<br><br>Defendant. | No. 16 C 06629<br><br>Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

This case arises out of a physical altercation between fourth grade student N.C. and school teacher Nikita Brown. Plaintiff Debrina Spraggins, as parent and next friend of minor N.C., has sued the Chicago Board of Education (the Board) and teacher Nikita Brown seeking compensation for alleged violations of various constitutional and state law rights.

Plaintiff's claims against Defendant Brown include a substantive due process claim and an excessive force claim, both in violation of 42 U.S.C. § 1983. Against the Board, Plaintiff claims willful and wanton failure to supervise under Illinois State law, and indemnification. Both Defendant Brown and Defendant Board have moved for summary judgment.

For the reasons stated below, Defendant Brown's motion for summary judgment (Dkt. 154, 196) is denied, and Defendant Board's motion for summary judgment (Dkt. 157) is granted in part and denied in part.

## A. Background

*1. The March 2016 Incident*

While the parties dispute many of the specific details giving rise to this suit, the following core narrative is undisputed. On March 1, 2016, N.C. was a fourth grade, special needs student at Carter G. Woodson Elementary School, and Defendant Brown was his Special Education teacher. (Dkt. 153 at 2) Around 3:00pm that afternoon, N.C.'s cell phone went off. N.C. was aware that it was against school policy to have an audible cellphone in class, as he had violated this rule on several other occasions. (Dkt. 153 at 4) After the phone went off, Defendant Brown asked N.C. to relay his passcode so she could shut off the ringer. (Dkt. 178, Exh. 1 at 20) N.C. refused. (*Id.*) Brown held the power button to turn off N.C.'s phone, prompting N.C. to swipe all the papers off Brown's desk. (*Id.*) Brown then asked the teaching aid to escort the other eight children out of the room. (*Id.*)

Both parties acknowledge that after the other children exited the classroom, N.C. threw a plastic trashcan across the room. (Dkt. 178, Exh. 1 at 20) It did not hit Brown. (*Id.*) In response, Brown grabbed N.C. around the neck, choked him for about five or six seconds, and shoved him backwards against a table. (*Id.* at 21) Brown then grabbed N.C. by his hoodie and dragged him, headfirst, by the hood of his hoodie out of the classroom and down two flights of stairs towards the principal's office. (*Id.*) As Brown approached the office, the assistant principal heard "loud shriek[s]" and saw Brown holding N.C.'s arm and one of N.C.'s shoes. (*Id.* at 22) N.C. was on his feet at this point. (*Id.*) The assistant principal proceeded to call 911.

(*Id.*) Paramedics arrived and treated N.C., who was upset and crying. (Dkt. 179, Exh. 2 at 7-8) A school security guard traveled with N.C. in the ambulance. (Dkt. 178, Exh. 1 at 22) By the time N.C. got to the hospital, he was calm and well behaved. (Dkt. 179, Exh. 2 at 8)

The parties contest the extent of N.C.'s injuries. Plaintiff claims that when N.C. arrived at the assistant principal's office, he "was convulsing and frothing at the mouth on the floor of [the] office, was struggling to breath [sic]" and was barely conscious. (Dkt. 179, Exh. 2 at 7) The hospital records indicate marking and bruising on N.C.'s neck as well as soreness and tenderness on other parts of his body. (*Id.* at 8) Defendants claim that N.C.'s injuries included mere "transient soreness" and that he appeared fine when he got in the ambulance. (Dkt. 154 at 6)

The parties also contest N.C.'s history of violence and behavioral issues, with Brown noting 55 documented incidents of violent outbursts (Dkt. 153 at 2), and N.C.'s mother claiming that he "never had any violent outbursts." (Dkt. 179, Exh. 2 at 3) The parties further contest whether N.C. had taken his psychotropic medication the day of the incident. Plaintiff claims N.C. took his medication (*Id.* at 3), while Brown claims it was clear he had not. (Dkt. 154 at 3)

The day after the incident, the principal reported the encounter to the Department of Children and Family Services (DCFS). (Dkt. 178, Exh. 1 at 24) The board first suspended Brown without pay, and later approved her termination. (*Id.* at 25) The board additionally placed a "do not hire" on Brown's file. (*Id.*)

3

Brown was arrested and charged with several counts of aggravated battery in state court. (Dkt. 178, Exh. 1 at 25) Brown eventually accepted a plea bargain for misdemeanor battery. (*Id.*)

## 2. Brown's Prior Employment History

Brown worked for the Board "off and on for twelve years." (Dkt. 178, Exh. 1 at 6) She had been fired from two schools, but apparently had no formal disciplinary problems other than the incident with N.C. (*Id.*) Plaintiff's rely heavily on another physical altercation involving Brown and student, Q.S. Several months before the incident with N.C., another teacher observed Brown: "trying to get a misbehaving student, Q.S., to meet classroom expectations […] Brown had Q.S.'s arm in her hands and it appeared that Q.S. was wincing in pain because she was twisting his arm." (*Id.* at 12-13) Once the other teacher made eye contact with Brown, she released the student. (*Id.*) The other teacher detailed the encounter in an email to the principal. (*Id.*) That teacher, however, did not report the altercation to DCFS. (*Id.* at 15)

Although Brown had no other history of formal discipline, records show that other teachers had difficulties "planning and communicating" with Brown. (Dkt. 178, Exh. 1 at 7) Several teachers complained that Brown was immature and unprofessional, and Brown verbally threatened other teachers in the past. (*Id.* at 8-13) Various email records indicate that the principal and assistant principal tried to address Brown's behavior through a series of emails and meetings. (*Id.* at 9-12) The Board also reminds the Court that in order to terminate Brown, it had to follow

4

procedures in the Chicago Teacher's Union collective bargaining agreement. (*Id.* at 5) The Board eventually did so, reassigning Brown immediately after the incident and officially terminating Brown on May 3, 2016. (*Id.* at 25)

## B. Summary Judgment Standard

Summary judgement is proper where there is "no dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, the Court must construe all facts and reasonable interferences in the light most favorable to the nonmoving party. *See CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F,3d 524, 528 (7th Cir. 2014). On summary judgment "the court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

## C. Discussion

### *1. Collateral Estoppel*

As a preliminary matter, Plaintiff claims that Defendant Brown is not entitled to summary judgment pursuant to collateral estoppel. (Dkt. 179 at 3-5) Because

5

Defendant Brown pleaded guilty to the basic facts of the event, Plaintiff argues, Brown cannot contest those facts now. (*Id.*)

A litigant is estopped from raising an issue in a collateral proceeding when four factors are met: "(1) the party against whom the estoppel is asserted was a party to the prior adjudication, (2) the issues which form the basis of the estoppel were actually litigated and decided on the merits in the prior suit, (3) the resolution of the particular issue was necessary to the court's judgments, and (4) those issues are identical to issues raised in the subsequent suit." *Wells v. Coker*, 707 F.3d 756, 761 (7th Cir. 2013) (citing *Wozniak v. DuPage County*, 845 F.2d 677, 682-83 (7th Cir. 1988)). At issue is the third prong, whether the issue was necessary to the court's judgments. In order to apply collateral estoppel based on a guilty plea, it must "conclusively appear that the matter of fact was so in issue that it was necessarily determined." *Wells*, 707 F.3d at 762. Courts read "necessarily determined" narrowly, and courts cannot apply collateral estoppel "if there is any uncertainty" regarding a finding of a specific fact. *Id*. In cases with multiple independent bases that could be sufficient to support the outcome, collateral estopped cannot be applied. *Id.* at 761.

Here, Plaintiff points to Defendant Brown's guilty plea to invoke collateral estoppel. Brown's guilty plea stated: "the defendant shoved [N.C.], picked him up by the back of the shirt and pushed him into the door of the classroom. The defendant then picked [N.C.] up by the back of the shirt and pushed him into the door of the classroom. The defendant then picked [N.C.] up and dragged him out of the

6

classroom by the arms, down a flight of stairs head first causing bodily injury." (Dkt. 179 at 4) Under Illinois law, each of these separate and distinct actions, in isolation, could form the basis for a charge of misdemeanor battery. *See* 720 Ill. Comp. Stat. 5/12-3. Therefore, the Court cannot determine which issue was necessary to the judgment in the earlier criminal case.[1] Collateral estoppel does not apply.

## 2. *Plaintiff's Fourteenth Amendment Claims*

In Plaintiff's Second Amended Complaint, the sole claim against Defendant Brown is a violation of substantive due process under the Fourteenth Amendment, brought under 42 U.S.C. § 1983, for the physical mistreatment of N.C. In her motion for summary judgement, Defendant Brown correctly points out that the Seventh Circuit has not acknowledged such a substantive due process right. (Dkt. 154 at 6-7) (citing *Wallace by Wallace v. Batavia Sch. Dist. 101*, 68 F.3d 1010, 1015 (7th Cir. 1995)). Brown further argues that even if this Circuit acknowledged a substantive due process right, plaintiff's claims would likely not be viable given the existence of adequate state law remedies. (Dkt. 154 at 7-9) (citing *Moore v. Willis Indep. Sch. Dist.*, 233 F.3d 871, 874-75 (5th Cir. 2000) ("as long as the state provides an adequate remedy, a public school student cannot state a claim for denial of substantive due process through excessive corporeal punishment")).

---

[1] In a case with similar facts, the Seventh Circuit noted: "[a]t first glance, it may seem peculiar that, where each of two alternative factual bases would be sufficient to support a guilty plea but neither is necessary, this indeterminacy means that neither of two bases can bind a party in subsequent litigation, even where the party agrees that at least one of these two bases was necessary." *Wells*, 707 F.3d at 761-62. This is the case here.

7

Persuaded by Defendant Brown's arguments, Plaintiff conceded that her substantive due process claim was likely not viable and dropped this claim against Brown. (Dkt. 179 at 5) As such, the Court will not address Plaintiff's substantive due process claims.

### 3. *Plaintiff's Fourth Amendment Claims*

After conceding the substantive due process claim against Brown, Plaintiff raised a new claim in her motion opposing summary judgment. (Dkt. 179 at 5-6) Plaintiff now raises a Fourth Amendment excessive force claim. (*Id.*) Plaintiff did not raise this claim in her Complaint, her First Amended Complaint, or her Second Amended Complaint. Rather, Plaintiff brought this claim for the first time in her response to Brown's summary judgment motion. Plaintiff asserts that the Fourth Amendment claim is implicit in her pleadings, that an excessive force claim has been factually plead, and that Plaintiff is entitled to offer alternative legal characterizations of the facts at this stage. (*Id.* at 6-8)

Generally, a plaintiff "may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Anderson v. Donahoe*, 699 F.3d 989, 997 (7th Cir. 2012). But when a plaintiff does raise a new claim in summary judgment briefing, "the correct first step is to consider whether it changes the complaint's factual theory, or just the legal theories the plaintiff has pursued so far." *Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017) (citing *Whitaker v. Milwaukee County, Wisconsin*, 722 F.3d 802, 808-09 (7th Cir.

8

2014)). If the former scenario, the plaintiff may be attempting to impermissibly amend his complaint, and the district court may decline to hear the new claims.

However, in the latter scenario, the court may allow plaintiff's new legal theory if based on facts already alleged. It is axiomatic that "[t]he Federal Rules of Civil Procedure do not require a plaintiff to plead legal theories." *Chessie,* 867 F.3d at 859. And when a plaintiff does plead legal theories, "it can later alter those theories." *Id.* Thus, the Seventh Circuit has instructed district courts to allow plaintiffs to proceed on new legal theories as long as the factual basis has already been plead, and as long as the new theory does not unfairly harm the defendant by causing unfair cost, delay, or surprise. *Id.*

Plaintiff claims that she is not changing her factual allegations and is only changing her legal theory. (Dkt. 179 at 6-8) In switching from substantive due process under the Fourteenth Amendment to excessive force under the Fourth Amendment, Plaintiff maintains that no new facts are needed, and all the necessary facts have been alleged in her complaint. (Dkt. 179 at 6-8). Plaintiff further argues that allowing this new legal characterization will not prejudice defendant because discovery has already closed, and the underlying facts are the same. *Id.* And while the Court is sympathetic to Defendant Brown's arguments that this case has been pending for two years, Plaintiff had multiple opportunities to amend her complaint and add this claim, and Defendant Brown wrote an entire brief on a claim that Plaintiff abandoned at this late stage, the Court is persuaded that Plaintiff is permissibly

9

altering her legal theory and not her factual allegations. The Court will thus address Plaintiff's Fourth Amendment claim.

The Fourth Amendment prohibits unreasonable searches and seizures. *Marion v. City of Cordydon*, 559 F.3d 700, 705 (7th Cir. 2009). The Supreme Court applied the Fourth Amendment's protections to searches of students in public schools, and the Seventh Circuit subsequently extended this protection to seizures of students by public school officials. *New Jersey v. T.L.O.*, 469 U.S. 325 (1985); *Wallace*, 68 F.3d at 1010. Generally, a seizure is unreasonable under the Fourth Amendment if it is accomplished through the use of excessive force. *Gonzalez v. City of Elgin*, 578 F.3d 526, 541 (7th Cir. 2009). "Whether the force used to effect a seizure is excessive depends on the totality of the circumstances under an objective reasonableness standard." *Marion*, 559 F.3d at 705.

In the context of a public school, "a teacher or administrator who seizes a student does so in violation of the Fourth Amendment only when the restriction of liberty is unreasonable under the circumstances then existing and apparent." *Wallace*, 68 F.3d at 1014. The question, then, is "whether the teacher's actions are objectively unreasonable in light of the facts and circumstances confronting him, without regard to the underlying intent or motivation of the teacher or whether the particular student thought the conduct was out of bounds." *Crecy v. Kankakee School District #111*, No. 15 C 1014, 2016 WL 10789394, at *11 (C.D. Ill. June 20, 2016) (citing *Wallace*, 68 F.3d at 1013-14). Furthermore, the teacher's reasonableness must be evaluated in the context of the school environment, "where restricting liberty is a

10

*sine qua non* of the educational process. Deprivations of liberty in schools serve the end of compulsory education and do not inherently pose constitutional problems." *Wallace*, 68 F.3d at 1013-14. Given the need to maintain order and discipline, and "[d]epending on the circumstance, reasonable action may certainly include the seizure of a student in the face of provocative or disruptive behavior." *Id*.

The Court must now determine whether a reasonable jury could find Brown's seizure of N.C. to be objectively unreasonable, and that Brown used excessive force in effecting the seizure. Viewing all the evidence in the light most favorable to the Plaintiff, as the Court must at this stage, the Court finds that genuine issues of material fact remain. Plaintiff alleges that Brown choked N.C., pushed him against a table, and dragged him headfirst down two flights of stairs. Plaintiff also contests Brown's need to maintain order or discipline, as the other students had left the room at the time of the seizure, the choking, and the dragging. Plaintiff further contests N.C.'s history of violent outbursts, whether he provoked Brown, and whether he resisted Brown so that she had no choice but to drag him down the stairs. These facts all create a dispute as to whether Brown's conduct was reasonable under the circumstances and in the educational setting. The Court finds enough issues of fact remain such that the Court cannot grant summary judgment in favor of Brown.

Additionally, the Court finds the force used by Brown, viewing the evidence in the light most favorable to the Plaintiff, to be distinguishable from the seizure found reasonable in *Wallace*. In *Wallace*, the force used was very minimal. The teacher merely grabbed the student's elbow to expedite her departure from the

11

classroom, and when asked to let go, did so immediately. *Wallace*, 68 F.3d at 1015. Here, N.C. testified that Brown grabbed him by his neck and choked him, shoved him into a table, and then dragged him headfirst down a hallway and down two flights of stairs. This use of force is much more severe than that of *Wallace*.

### *4. Defendant Brown's Qualified Immunity Defense*

Defendant Brown argues that she is entitled to qualified immunity because her conduct did not violate clearly established constitutional rights.

"Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). The Supreme Court in *Saucier v. Katz* established a two-part test to determine whether qualified immunity should be granted: (1) whether the alleged facts, viewed in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right, and 2) whether that right was clearly established. 533 U.S. 194 (2001). Plaintiff may show the existence of a clearly established constitutional right either by "(1) pointing to a closely analogous case that established a right to be free from the type of force [ ] used on him, or (2) showing that the force was so plainly excessive that, as an objective matter, the [officials] would have been on notice that they were violating the Fourth Amendment." *Haynes v. Lansing*, 656 F. Supp. 2d 783, 791 (N.D. Ill 2009). The second scenario is the "rare obvious case" where an official's conduct is so egregious that a body of legal precedent is unnecessary. *Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017).

Here, Plaintiff invokes both grounds to show the existence of a clearly established right. Plaintiff provides a closely analogous case of *Crecy v. Kankakee School District #111*. No. 15 C 1014, 2016 WL 10789394, at *11 (C.D. Ill. June 20, 2016). In that case, the court denied summary judgment to a defendant teacher because a student's constitutional rights were violated when the teacher put the disruptive student in a chokehold. *Crecy*, 2016 WL 10789394, at *11. Defendant Brown contests the use of this case as it was decided three months after the incident with Defendant Brown and N.C. But Plaintiff additionally argues that the force here was so plainly excessive, so egregious, that no reasonable person could think her conduct was constitutional. The Court finds this second ground persuasive.

It is well established that a school administrator or teacher cannot use excessive force against a student. *Doe v. Heck*, 327 F.3d 492, 523 (7th Cir. 2003) (citing *Meyer v. Nebraska*, 262 U.S. 39, 399 (1923); *Ingram v. Wright*, 430 U.S. 651, 661 (1977) (noting that at common law, "a single principle has governed the use of corporeal punishment since before the American Revolution: Teachers may impose reasonable but not excessive fore to discipline a child.")). Choking a fourth-grade student, shoving him against a table, and dragging the student headfirst down two flights of stairs is clearly beyond the pale of reasonable discipline. There is no hazy border in this case. No reasonable teacher "would ever need a judge to tell them in advance that the conduct at issue here was unreasonable." *Wordlow v. Chi. Bd. of Educ.*, No. 16 C 8040, 2018 U.S. Dist. LEXIS 199701, at *29 (N.D. Ill. Nov. 26, 2018)

(citing *Green*, 868 F.3d at 633 (body of relevant precedent is unnecessary in the "rare obvious case")). Accordingly, Brown is not entitled to qualified immunity.

### *5. State Law Claims Against Defendant Board*

In her original complaint, Plaintiff brought a series of state torts against Defendant Brown and a corresponding *respondeat superior* claim against the Board. Plaintiff dropped the state tort claims against Brown, and in their motion for summary judgment the Board argued that the corresponding *respondeat superior* claims should be dropped as well. Plaintiff agreed, and subsequently dropped the *respondeat superior* claim in her summary judgment response. As such, the court will not address any *respondeat superior* claims. What remains is a willful and wanton failure to supervise claim and a claim for indemnification. The Court will discuss each claim in turn.

The Board asserts that it cannot be held liable for failure to supervise Brown because the Board has immunity under the Local Governmental and Governmental Employees Tort Immunity Act (the Tort Immunity Act), 745 ILCS 10/2-201. The Tort Immunity Act provides immunity to public employees exercising discretion and determining policy. Plaintiff denies that the Board had discretion in failing to contact DCFS, as required by the Illinois Abused and Neglected Child Reporting Act (the Reporting Act). 325 ILCS 5/1; 89 Ill. Admin. Code § 300 app B. Because the Board lacked discretion, argues Plaintiff, immunity does not apply.

The Tort Immunity Act was intended to protect local public entities and public employees from liability resulting from the operation of government. *Ware v City*

*of Chicago*, 375 Ill. App. 3d 574, 577-78, 873 N.E.2d 944, 314 Ill. Dec. 14 (2007). The purpose of the Act was "to ensure that public funds were not dissipated by private damage awards." *Id.* at 578. Under the Act, local entities may be liable in tort, but this liability is limited through "an extensive list of immunities based on specific government functions." *Harrison v. Hardin County Comm. Sch. Dist. No. 1*, 197 Ill. 2d 466, 471, 758 N.E.2d 848, 259 Ill. Dec 440 (2001). Relevant here is Section 2-201 of the Tort Immunity Act, which provides: "a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201. A public school board is a local public entity and the term "employee" in Section 2-201 "includes a present or former officer, member of a board, commission or committee, agent, volunteer, servant or employee, whether or not compensated, but does not include an independent contractor." 745 ILCS 10/1-206; 745 ILCS 10/1-202.

Under Section 2-201, "an employee may be granted immunity if he holds *either* a position involving the determination of policy *or* a position involving the exercise of discretion … [but] immunity will not attach unless the plaintiff's injury results from an act performed or omitted by the employee in determining policy *and* in exercising discretion." *Harinek v. 161 N. Clark St. Ltd. P'ship*, 181 Ill. 2d 335, 341, 692 N.E.2d 1177, 230 Ill. Dec. 11 (Ill. 1998) (emphasis in original). Discretionary acts are "those which are unique to a particular public office, while ministerial acts are those which a person performs on a given state of facts in a prescribed

15

manner, in obedience of legal authority, and without reference to the official's discretion as to the propriety of the act." *Snyder v. Curran Twp.*, 167 Ill. 2d 466, 474, 675 N.E.2d 988, 212 Ill. Dec. 643 (Ill. 1995). The Reporting Act states that any "school personnel…having reasonable cause to believe a child known to them…may be an abused child or a neglected child shall immediately report" the abuse to DCFS. 325 ILCS 5/4.

In the instant action, the Board argues that decisions regarding the supervision, employment status, and discipline of Brown involved the Board's discretionary, policy-making authority and the Board is thus immune from liability under the Tort Immunity Act. Plaintiff responds that the Reporting Act divests school officials of any discretion because school officials must report any suspected abuse to DCFS, and that "following the law is a ministerial function and not a discretionary act." (Dkt. 178 at 5). According to Plaintiff, another teacher was required to report the incident involving Brown twisting Q.S.'s arm to DCFS (he failed to do so), and this statutory requirement makes the Board's decisions ministerial and not discretionary.

In support of her proposition, Plaintiff relies heavily on *Doe v. Dimovski*, where the Illinois Appellate Court held that Section 2-201 did not immunize the defendants from liability due to the reporting requirements of the Reporting Act. 336 Ill. App. 3d 292, 783 N.E.2d 193, 270 Ill. Dec. 618 (Ill. App. Ct. 2003). However, in *Dimovski*, one of the claims brought by the plaintiff was a claim based on defendant's "fail[ure] to notify DCFS about previous complaints of inappropriate sexual

behavior" of a teacher. *Id.* at 196. The court noted that "the gravamen of plaintiff's complaint [was] based on a failure to report" and that "[S]ection 2-201 d[id] not immunize the [defendant] from liability for failure to report." *Id.* at 198-99.

Here, unlike in *Dimovski*, Plaintiff is not bringing a claim against the Board for failure to report as required. (Dkt. 139 at 5) Although Plaintiff's Second Amended Complaint mentions that the Board failed to notify DCFS, Plaintiff is not bringing a legal claim for failure to report. (Dkt. 139 at 5) Rather, Plaintiff is bringing a willful and wanton failure to supervise claim. And a failure to supervise claim is based upon the Board's failure to supervise its employees, not upon another teacher's failure to report under the Reporting Act.[2] The Board's duty to report child abuse—if it had that duty at all—is a separate issue from whether the Board willfully and wantonly failed to supervise Brown. *U.S. Bank*, 2007 U.S. Dist. LEXIS 35722, at *8. As such, "the Board's duty to report child abuse to authorities is a separate issue that is not before us and does not offer any justification for nullifying the effect of Section 2-201." *Id.* at *8-9.

---

[2] The Board also contests whether the other teacher or the Board had a duty to report at all. The Board maintains that Brown holding or twisting a student's arm did not rise to the level of suspected child abuse such that a report to DCFS would have been appropriate or necessary. The Board also notes that many preliminary decisions under the Reporting Act are discretionary, such as whether there is a "substantial risk" of abuse, whether the employee has "reasonable cause to believe" abuse has occurred, or whether the allegation is "credible." *See Peck v. W. Aurora Sch. Dist. 129*, No. 06 C 1153, 2006 U.S. Dist. LEXIS 67145, at *20 (N.D. Ill. Aug. 30, 2006) (holding that the decision whether suspected child abuse is credible is discretionary). So even if Plaintiff brought a claim for failure to report, the Board believes it would still be immune because deciding to report involves some level of discretion and is not purely ministerial.

Plaintiff's willful and wanton failure to supervise claim is based upon the Board's decisions to discipline or supervise Brown, which were clearly discretionary decisions, made in accordance with Board policies, and are thus covered under 2-201. The Board is entitled to immunity, and the Court grants the Board's summary judgment motion on this claim.

## *6. Indemnification*

Plaintiff brings a claim against the Board for indemnification under Section 10/9-102 of the Tort Immunity Act. The Board moved for summary judgment, arguing there is no genuine dispute of material fact that Brown was acting outside the scope of her employment "when she committed a misdemeanor battery on N.C." (Dkt. 158 at 16)

Section 10/9-102 of the Tort Immunity Act directs a local public entity "to pay any tort judgment…for compensatory damages…for which it or an employee while acting within the scope of his employment is liable." 745 ILCS 10/9-102. In an action for indemnification, Illinois law defines the type of conduct that falls within an employee's scope of employment. *See Copeland v. County of Macon*, 403 F.3d 929, 932 (7th Cir. 2005). While there is no exact definition of scope of employment, the Illinois Supreme Court has adopted the following formulation: "Conduct of a servant is within the scope of employment if, but only if, (a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; (c) it is actuated, at least in part, by a purpose to serve the master." *Pyne v. Witmer*, 129 Ill. 2d 351, 543 N.E. 2d 1304, 1308 (1989) (citing Restatement (Second) of

18

Agency § 228 (1958)). For the last prong, an employee can be motivated by personal interest so long as personal interests are not the employee's sole motivating factor. *See Wright v. City of Danville*, 174 Ill. 2d 391, 405, 675 N.E.2d 110, 118 (1996) ("if the employee's actions are different from the type of acts he is authorized to perform or were performed purely in his own interest, he has departed from the scope of employment"). If the employee had any motivation to serve the employer, she may be acting within the scope of employment.

Here, the Board argues that Brown was not acting within the scope of her employment during the physical altercation with N.C. The Board notes that "criminal misdemeanor battery" is not conduct "'of the kind' she was employed to perform" as a special education teacher. (Dkt. 158 at 25) The Board further claims that Brown's conduct was not done to serve the Board, but rather was solely motivated by her personal interests in her own safety. The Board disputes Brown's claim that she was motivated to protect her other students, and notes that Brown committed the battery after the other students had left the room. In contrast, Plaintiff alleges that Brown was acting within the scope of her employment or, at the bare minimum, a question of fact remains such that summary judgment is inappropriate. Plaintiff notes that part of Brown's duties involved disciplining students, and disciplining students can involve physical contact. Plaintiff also relies on Brown's statements that she feared for other students' safety to show that Brown was motivated by a purpose to serve her employer, the Board.

19

Taking the evidence in the light most favorable to the Plaintiff, the Court finds a genuine dispute of material fact as to whether Defendant Brown was acting within the scope of her employment during the physical altercation with N.C. This is a question for the jury. The Board's motion for summary judgment on the indemnification claim is denied.

## **CONCLUSION**

For the foregoing reasons, Defendant Brown's motion for summary judgment (Dkt. 154, 196) is denied, and Defendant Board's motion for summary judgment (Dkt. 157) is granted in part and denied in part.

E N T E R:

Dated: September 30, 2019

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge